# CHARLESTON.

JAMES M. CARDWELL v. THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED.

(No. 6097)

Submitted February 7, 1928.   Decided February 14, 1928.

1. INSURANCE—*That Mine Superintendent After Amputation of Part of Foot Served as Superintendent Does Not, as Matter of Law, Evidence Lack of Partial Disability as Superintendent; Especially in View of Resignation for Disability.*

   Where a coal mine superintendent has had the front portion of his foot from the ball amputated as the result of an accident, and afterwards has served as such superintendent and as assistant mine foreman in charge of loadings, the fact of service alone does not force the conclusion that he was not partially disabled from performing one or more of his material duties as superintendent, especially in view of the fact that he was requested to resign and did resign as superintendent for that cause, and it appears that he could not walk over the mine without great pain and swelling from the newly amputated foot.   (p. 198.)

   (Accident Insurance, 1 C. J. § 340.)

2. SAME—*Partial Disability Under Accident Policy From Amputation of Part of Foot Held Jury Question.*

   In such case the question of partial disability under an accident policy providing for payment for such disability is a jury question.   (p. 200.)

   (Accident Insurance, 1 C. J. § 340.)

3. ACTION—*Suit by Motion for Judgment on Contract Begins From Time Notice is Returned to and Filed in Clerk's Office, Not From Date of Notice (Code, c. 121, § 6).*

   A suit by way of motion for judgment on a claim arising under contract, begins from the time the notice is returned to and filed in the clerk's office, and not from the date of the notice.   (p. 200.)

   (Actions, 1 C. J. § 409.)

4. APPEAL AND ERROR—COSTS—*Where Judgment is Excessive by Less Than $100, Jurisdictional Amount, Appellate Court Will Strike Out Clearly Ascertainable Excess and Affirm Judgment as Corrected; on Modifying and Affirming Judgment, Appellate Court Will Award Costs to Party Substantially Prevailing on Points of Error.*

   Where, on writ of error, it appears that the verdict and judgment are excessive under the evidence and pleadings, but

such excess is less than $100.00, the jurisdictional amount, the appellate court will correct the judgment by striking out the excess if clearly ascertainable and affirm the judgment as corrected, and award costs to the party substantially prevailing on the points of error involved.    (p. 200.)

(Appeal and Error, 4 C. J. § 3170; Costs, 15 C. J. § 620.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, McDowell County.

Action by notice of motion for judgment by James M. Cardwell against the Employers' Liability Assurance Corporation, Limited.    Judgment for plaintiff, and defendant brings error.

*Modified and affirmed.*

*Sanders, Crockett, Fox & Sanders,* for plaintiff in error.
*Harman & Howard,* for defendant in error.

LIVELY, JUDGE:

This was a notice of motion for judgment by J. W. Cardwell, plaintiff below, against the Employers' Liability Assurance Corporation, Ltd., plaintiff in error, to recover disability benefits alleged to be due under an accident policy. Upon the trial of the case by a jury on June 15, 1927, a verdict was returned for the plaintiff in the sum of $2,393.54, which included total disability benefits at $50.00 a week from November 12, 1925, to February 5, 1926, and partial disability benefits at $25.00 a week from February 5, 1926, to June 15, 1927, and medical fee of $15.00.    The defendant prosecutes error from the judgment entered on this verdict.

The insurance company contends that the verdict is contrary to the law and evidence, first, because the jury allowed the plaintiff a recovery under the partial disability clause of the policy, and second, because the plaintiff was allowed partial disability benefits from February 5, 1926, to June 15, 1927, the date of the trial, whereas in any event he was entitled to recover only to May 6, 1927, the date of the institution of this suit, making the verdict excessive to the extent of $142.84.

By reason of an injury received on November 12, 1925, while attempting to board a passenger train, the plaintiff suffered the loss of a greater portion of his left foot, it being necessary to amputate the member from and including the ball of the foot forward. As a result, from November 12, 1925, to February 5, 1926, the plaintiff was totally disabled from performing his duties as a mine superintendent, the occupation in which he was engaged at the date of the accident. The insurance company does not question the correctness of the verdict as to the allowance for total disability.

On February 5, 1926, the plaintiff went to work as a mine superintendent for the Raleigh Fire Creek Coal Company, and continued in its service for a period of about two months, when the physical disability arising out of the injury to his foot made it impossible for him to satisfactorily perform his duties as superintendent, and he was requested to, and did resign. He then returned to his home where he spent several weeks in retirement. About June 1, 1926, he secured employment with the Consolidation Coal Company in Kentucky, as an assistant mine foreman at a salary of $165.00 a month (as a mine superintendent he had earned over $300.00 a month), with the promise that within a month he would be elevated to the rank of superintendent. Plaintiff continued in this position as assistant mine foreman for about two months, having been assigned to take charge of mechanical loading. He was not given the superintendency as promised. The plaintiff testified that he has never been able to fully perform his duties of mine superintendent since his injury; and from that time he has been unable to properly inspect a mine because of his difficulty in getting around therein.

On this evidence it is the contention of the defendant insurance company that the plaintiff has not brought himself within the provisions of the partial disability clause of the policy providing for the payment of $25.00 a week during the time the insured was continuously disabled or prevented from performing one or more material duties pertaining to his occupation as mine superintendent. Stress is laid upon plaintiff's cross-examination testimony that while he was employed by the Raleigh Fire Creek Coal Company there was

no material duty he was unable to perform. Plaintiff testified that he possibly could have forced himself to do all the work required of him as superintendent, but he said that the pain in his foot was so intense that he did not feel able to carry out all the duties assigned to him, especially that of thoroughly inspecting the mine workings. He testified that his hours of employment were quite long, and that after he had been on his feet about half the day, his injured foot would swell to such an extent that it would be impossible for him to walk around. It is further argued by the defendant insurance company that when the plaintiff went to Kentucky to work as assistant mine foreman, the character of his work was such that it necessarily made it more burdensome than that of mine superintendent, and that consequently he could not have been partially disabled from performing any of his duties as mine superintendent during that time.

It is difficult to lay down a specific rule applicable to all cases of this kind, because each case, in a large measure, is dependent upon its own facts. However we believe that the evidence warranted a finding by the jury that the plaintiff was partially disabled within the meaning of the terms of the partial disability clause of the policy, from February 5, 1926, to June 1, 1927.

But, the judgment of the lower court is erroneous to this extent—the jury found the plaintiff was entitled to partial disability benefits from February 5, 1926, to June 15, 1927, the date of the trial, whereas weekly installments that were not due at the date of the commencement of the suit were not recoverable in this action. *Relief Ass'n.* v. *Post,* 122 Pa. St. 579, 9 A. S. R. 147; 1 C. J. sec. 219, p. 484; *Rayburn* v. *Pa. Casualty Co.,* 141 N. C. 425, S. E. 283. The date of the institution of a suit on a notice of motion for judgment, under section 6, chapter 121, Code, is the day the notice is returned to, and filed in, the clerk's office. *Charlton* v. *Pancake,* 98 W. Va. 363. The record does not disclose the date of such return, but in the absence of any objection it will be presumed on this writ that the statutory requirement that the notice should be returned to the clerk's office fifteen days before the date the motion is heard, has been complied with. *Va. Hot Springs*

*Co. v. Schreck,* 131 Va. 581; *Wood* v. *Kane,* 143 Va. 281. The motion was heard on June 15, 1927, and therefore it would be presumed that the notice was filed in the clerk's office on June 1st. This makes a difference of $50.00 in plaintiff's recovery. The verdict is excessive to that extent, and will be modified here. As this excess is less than the jurisdictional amount of this Court, the costs will be awarded to the plaintiff below as the party substantially prevailing. *Toler* v. *Sanders,* 77 W. Va. 398; *Wallace* v. *Leroy,* 57 W. Va. 263.

The judgment will be modified and affirmed.

*Modified and affirmed.*